UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                Case No. 8:08-bk-01296-MGW
                                                                      Chapter 13
Harry McKay, Jr.,

      Debtor,
_____/

## MEMORANDUM OPINION AND ORDER ON THE
## DEBTOR'S OBJECTION TO AMENDED CLAIM NO. 5 OF THE IRS

### Introduction[1]

In this contested matter, the Debtor, Harry McKay, Jr. ("McKay"), a tax protester, objects to the Amended Claim No. 5 filed by the Internal Revenue Service ("IRS") for taxes owed for the tax years 1996-2007 ("Tax Claim"). The primary legal issue is whether McKay's "zero returns"[2] filed in April 2000 for tax years 1996-98 constitute valid tax returns sufficient to trigger the statute of limitations under § 6501 of the Internal Revenue Code. While the Federal Circuit Courts are split on this issue, this Court adopts the majority view that zero returns do not constitute valid tax returns. Moreover, the Court finds that McKay effectively rescinded his zero returns by notifying the IRS six months after he filed the zero returns that he was exercising his right to "revoke . . . all [IRS] forms . . . ever . . . submitted by me." The Court thus rejects McKay's argument that the statute of limitations has run for any of the 1996-98 tax years. McKay's objection to the IRS's Tax Claim will be overruled.

---

[1] This Memorandum Opinion supplements the courts findings of fact and conclusions of law made and recorded in open court at the trial held in this matter on January 28, 2009.

[2] A "zero return" is a completed tax form that lists a zero for each line item of income, adjustments, and expenses.

**Factual Background**

McKay's tax liability for the 1996-98 time period initially resulted from his sale of eight residential real estate properties. McKay failed to file tax returns for these years until April of 2000 when he filed a zero return for the calendar tax years 1996-98.

The IRS eventually rejected McKay's 1996-98 tax returns as filed. Under the authority of section 6020(b)(1) of the Internal Revenue Code, the IRS created for each of these years what is known as a "substitute return"—i.e., a return that the IRS creates for the taxpayer based upon informational resources available such as employer W-2s and public records. The substitute returns created for McKay included gross sales amounts for eight residential real estate transactions. The returns did not, however, include any deductions for McKay's original cost of the properties, improvements made to the properties before resale, or any expenses associated with maintaining or selling the properties. Thus, the substitute returns taxed McKay as if the entire sales proceeds for each property constituted taxable income.

The record reveals a long history of contentious correspondence between the parties. The IRS sent McKay Notices of Deficiencies as early as April 2003. It made numerous attempts to work with McKay and resolve his tax delinquencies. McKay, however, chose not to cooperate with the IRS agents or petition the Tax Court when notified of his right to do so. Instead, McKay responded to the IRS's correspondence with voluminous pages of tax protestor rhetoric that challenged the U.S. Government's overall right to tax its citizens and proclaimed that the IRS's actions against him violated his individual rights.

Prior to filing his petition for bankruptcy, McKay refused to provide the IRS with any property cost basis deductions or expense information that might lower his taxable income, and the accompanying interest and penalties continued to accrue. On January 31, 2008, the day

before a hearing scheduled in District Court on the IRS's Petition for Judicial Approval to Levy Upon a Principal Residence,[3] McKay filed his Voluntary Petition for Bankruptcy under Chapter 13.[4]

The IRS timely filed the Tax Claim in this bankruptcy case for the taxes McKay owed. Thereafter, McKay filed his Objection to Claim No. 5 of the Internal Revenue Service ("Objection to Claim").[5] It was during the discovery period preceding the trial on the Objection to Claim, that McKay finally provided the IRS with documentation of his cost basis deductions and expenses for the 1996-98 real estate transactions.

At the trial, the IRS accepted McKay's cost basis deductions and expenses in full and stated that it had recalculated McKay's tax assessment for 1996-98 accordingly. The IRS explained, however, that it had also included in its recalculated claim, the taxable income from four residential real estate transactions not previously included in the original assessment. An IRS Revenue Officer testified that the IRS had identified McKay's participation in the four previously undisclosed real estate transactions from publicly available Tax Deed records. From these records, the IRS simply divided the amount of the Documentary Stamp Tax assessed by the applicable stamp tax rate to calculate the gross sales proceeds for each transaction and then deducted the costs and expenses McKay provided to determine the net taxable gain.

McKay did not offer any evidence that contradicted the IRS's evidence and calculations with respect to the income and expenses itemized for tax years 1996-98. Rather, McKay argued that he is not liable for the additional taxes owed for the four new transactions discovered by the

---

[3] *U.S. v. McKay*, Case No. 8:07-CV-01928-EAK-MAP, Doc. No. 1.

[4] *In re McKay*, Case No. 8:08-bk-01296-MGW, Doc. No. 1. All further docket number references are to this bankruptcy case.

[5] Doc. Nos. 46, 70.

3

IRS prior to trial because the applicable statute of limitations had expired for assessing any new taxes for the years in question.

## Conclusions of Law

A. Jurisdiction

The Court has jurisdiction over the Objection to Claim under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Moreover, Bankruptcy Code section 505(a) "confers on the bankruptcy court authority to determine certain tax claims."[6] "If a tax claim has [not] been litigated to a final judgment prior to the commencement of the bankruptcy case, the bankruptcy court . . . has jurisdiction notwithstanding a default judgment or a taxpayer's failure to timely pursue its remedies under the applicable tax laws, which would ordinarily (*i.e.,* outside of bankruptcy) prohibit redetermination of the tax assessment."[7]

B. Statute of Limitations under 26 U.S.C. § 6501

Under subsection 6501(a) of the Internal Revenue Code, the IRS must assess federal income taxes within three years from the date a taxpayer files a return.[8] Under subsection 6501(e), however, this three-year statute of limitations for assessment can be extended to six years if the taxpayer underreports taxable gross income by more than 25%.[9] There is no statute of limitations for the assessment of tax if the taxpayer fails to file a return at all.[10] Likewise, the statute of limitations does not begin to run if the taxpayer files an invalid return.[11]

---

[6] *See In re Custom Distrib. Serv.*, 224 F.3d 235, 239-240 (3rd Cir. 2000).

[7] *Cent. Valley AG Enter. v. U.S.*, 531 F.3d 750, 755 (9th Cir. 2008) (citing *City Vending of Muskogee, Inc. v. Okla. Tax Comm'n,* 898 F.2d 122, 124 (10th Cir. 1990)).

[8] 26 U.S.C. § 6501(a).

[9] 26 U.S.C. § 6501(e)(1)(A).

[10] 26 U.S.C. § 6501(c)(3).

[11] *Loudon v. Comm'r*, T.C. Memo 1993-36 *1 (T.C. 1993) (citing *Richardson v. Comm'r,* 72 T.C. 818, 823 (T.C. 1979)).

The legal issue here is whether McKay's zero returns filed in April 2000 are valid returns that trigger the six-year statute of limitations on new assessments. If those returns are valid, then any new tax assessment after April 2006 may be time-barred. Conversely, if the zero returns are not valid, then the time to make those assessments remains open. For the reasons stated below, the Court rejects McKay's argument that his zero returns are valid returns sufficient to start the running of the statute of limitations.

1. The *Beard* Test

In *Beard v. Commissioner,*[12] the United States Tax Court articulated a four-element inquiry for determining whether a document is sufficient for statute of limitations purposes. Under what is now commonly known as "the *Beard* Test," in order for the filing to qualify as a valid return,

> [1], there must be sufficient data to calculate tax liability; [2], the document must purport to be a return; [3], there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and [4], the taxpayer must execute the return under penalties of perjury.[13]

2. *Beard's* First Three Elements and the Ninth Circuit's Isolated Decision in *Long*

Some of the caselaw on zero returns substantively evaluates the first three of these elements in combination and some cases evaluate the elements in isolation. For example, the former Fifth Circuit in *United States v. Smith* (i.e., a case decided before *Beard*) effectively combined the first three elements when it found that the taxpayer's "1974 and 1975 'returns[,]' which contained nothing but zeros and constitutional objections, plainly did not even purport to

---

[12] *Beard v. Comm'r*, 82 T.C. 766, 777-79 (T.C. 1984).

[13] *Id.* (citing *Germantown Trust Co. v. Comm'r*, 309 U.S. 304 (1940); *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934); and *Florsheim Bros. Drygoods Co. v. U.S.*, 280 U.S. 453 (1930)).

disclose the required information."[14] In a post-*Beard* decision, the Third Circuit in *United States v. Hattman* determined that

> We need not decide whether Hattman's zero return provides sufficient data upon which to calculate tax liability [—i.e., *Beard's* first element—] because it fails to represent an honest and genuine or reasonable attempt to satisfy the tax law requirements [—*Beard's* third element].[15]

But in *United States v. Long* (another pre-*Beard* decision), the Ninth Circuit ruled on the narrow issue of whether a zero return presented sufficient data that would allow the IRS to compute the tax due.[16] Comparing a zero return to a return that left the line items blank, the *Long* court found that "some computation was possible" from a zero but that "[n]othing can be calculated from a blank."[17] Based upon that reasoning, the Ninth Circuit found the criminal defendant's zero returns to be sufficient tax returns.[18]

Here, McKay relies primarily on *United States v. Long*. This Court, however, finds the holding of *Long* to be unpersuasive. A majority of circuit courts—including the Third, Sixth, Seventh, Eighth, and Tenth—have rejected *Long*.[19] Most importantly, the former Fifth Circuit's decision in *Smith*[20] and the Eleventh Circuit's 1982 decision in *United States v. Pilcher* provide binding precedent for this Court:

---

[14] *U.S. v. Smith*, 618 F.2d 280, 281 (Former 5th Cir. 1980). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before October 1, 1981.

[15] *Hattman v. Comm'r*, 2006 WL 2506567 *2 (3rd Cir. 2006) (slip copy).

[16] *U.S. v. Long*, 618 F.2d 74, 75-76 (9th Cir. 1980).

[17] *Id.*

[18] *Id.*

[19] *See Hattman*, 2006 WL 2506567 at *2; *U.S. v. Grabinski*, 727 F.2d 681, 687 (8th Cir. 1984*); U.S. v. Mosel*, 738 F.2d 157, 158-59 (6th Cir. 1984); *U.S. v. Moore*, 627 F.2d 830, 835 (7th Cir. 1980); *U.S. v. Rickman*, 638 F.2d 182, 184 (10th Cir. 1980).

[20] *See* footnote 14 above.

> Protest documents duplicating in part U.S. individual income tax return form 1040's but containing no financial data <u>are not tax 'returns'</u> . . . . The failure to provide amounts on income tax returns cannot be justified out of a political disagreement with the tax laws or in protest against the policies of the Government.[21]

Accordingly, a number of bankruptcy courts in this circuit have explicitly held that zero returns do not constitute valid tax returns.[22]

This Court, therefore, finds that that McKay's zero returns for the tax years 1996-98 fail the first three elements of the *Beard* test. McKay's returns do not contain sufficient data to allow the calculation of his tax liability, they do not purport to be valid returns, and they do not represent an honest and genuine or reasonable attempt to satisfy the requirements of the tax law.[23] The Court aligns itself with the majority of courts rejecting *Long*, and it agrees with the Sixth Circuit's statement in *U.S. v. Mosel*:

> Although [the taxpayer's] argument has some surface appeal in that the symbol zero has mathematical meaning, we conclude that no reasonable person employing such a symbol in these circumstances could understand that he had submitted the information which is required in a tax return.[24]

3. *Beard's* Fourth Element

As for *Beard*'s fourth element that "the taxpayer must execute the return under penalties of perjury[,]"[25] numerous courts have considered whether attaching tax protestor arguments can invalidate the taxpayer's return. The caselaw reveals that merely adding the words "under

---

[21] *U.S. v. Pilcher*, 672 F.2d 875, 877 (11th Cir. 1982) (emphasis added) (citing, among others, *Smith*, 618 F.2d at 282).

[22] *See,* e.g., *In re Fondren*, 305 B.R. 918, 919 (Bankr. M.D. Ala. 2002) (following *Smith*); *In re Thompson*, 207 B.R. 7, 11 (Bankr. M.D. Fla. 1996) (finding that a zero return did not constitute a filed tax return and thus was not dischargeable in bankruptcy); *In re Ingram*, 1996 WL 788401 *3 (Bankr. S.D. Fla. 1996) (not reported) (following *Pilcher*).

[23] *Beard*, 82 T.C. at 777.

[24] *Mosel*, 738 F.2d at 158.

[25] *Beard*, 82 T.C. at 777.

protest" to the jurat printed on a Form 1040 may be a proper exercise of a taxpayer's "first amendment right to protest to the [IRS] while still complying with [the] statutory obligation to file a timely tax return."[26] Similarly, the Fifth Circuit recently found that adding the ambiguous phrase "without prejudice" to the jurat "does not, on its face, disclaim [the signer's] status as a taxpayer, call the accuracy of the data into question, or make 'a mockery' of the return."[27] In contrast, adding more significant statements such as "provided under duress"[28] and "I do not concede that my wages are taxable income under the law"[29] raises serious doubts as to the truthfulness and accuracy of the taxpayer's return. After all, "[a] taxpayer's signature on a return with a jurat indicates that the taxpayer attests to the accuracy of the reported data."[30] Thus, striking the jurat[31] or significantly altering it to nullify the filer's verification of the return under penalties of perjury will invalidate the entire return.[32]

Here, McKay did not alter the jurat, but he did attach significant tax protester arguments to his zero returns.[33] Those arguments alleged among other things that "no section of the Internal Revenue Code . . . [e]stablishes an income tax . . . [or] [p]rovides that income taxes

---

[26] *McCormick v. Peterson*, 1993 WL 566334 (E.D.N.Y. 1993) (not reported).

[27] *U.S. v. Davis*, 603 F.3d 303, 307 (5th Cir. 2010).

[28] *Letscher v. U.S.*, 2000 WL 1290864 *1-3 (S.D.N.Y. 2000) (not reported); *but see Todd v. U.S.*, 849 F.2d 365, 367-368 (9th Cir. 1988) (taxpayer added the phrase "signed involuntarily under penalty of statutory punishment" under the jurat, but the government conceded that the return was "complete and accurate").

[29] *In re Schmitt*, 140 B.R. 571, 572 (Bankr. W.D. Ok. 1992) (finding that adding this language to the Form 1040 jurat rendered it ineffective, thus nullifying the entire return).

[30] *Davis*, 603 F.3d at 306.

[31] *Borgeson v. U.S.*, 757 F.2d 1071, 1072-73 (10th Cir. 1985) (noting that the United States Supreme Court has upheld "on several different occasions . . . [t]he requirement of a verification or oath appearing on returns and documents filed with the IRS"); *Mosher v. IRS*, 775 F.2d 1292, 1293-94 (5th Cir. 1985) (also noting that 26 U.S.C. §§ 6601 and 6605 prohibit a taxpayer from altering a tax return jurat).

[32] *Sloan v. Comm'r*, 53 F.3d 799, 800 (7th Cir. 1995) (Taxpayers attached a "Denial & Disclaimer" that, among other things, "disclaim[ed] liability for any tax shown on the form.")

[33] *See* Doc. No. 86-2, *IRS Ex. 2* (introduced into evidence at Jan 28, 2009 trial (H'ring Tr. 107)).

8

'have to be paid on the basis of a return' . . . ."[34]  McKay specifically addressed the zero amounts that he listed as income line items and stated that his listing of a zero for income was based on his interpretation of selected caselaw.  He claimed that because he had no corporate income, he had no taxable income "under the Corporation Excise Tax Act of 1909."[35]  He summarized his position by stating that he could "only swear to having 'zero' income for [the tax year]."[36]

After comparing McKay's tax protestor rhetoric to the above caselaw, the Court finds that McKay's tax protestor rhetoric has passed the threshold of the lawful right to protest governmental taxation.  Combined with the zero amounts submitted, his attachments clearly call into question the accuracy of the data within and "make 'a mockery' of [his] return."[37]  His qualification that he is swearing only to having zero taxable income renders the signed jurat a nullity and invalidates his returns under the fourth element of *Beard.*

C. McKay's Subsequent Recission of his 1996-98 Zero Returns

Even if McKay's 1996-98 zero returns could be found valid, in a letter dated October 13, 2000, just six months after he filed his zero returns, McKay notified the IRS that he was exercising his right to "revoke, rescind, cancel, and to render null and void, . . . all [IRS] forms, schedules, and documents ever signed and/or submitted by me."[38]  The Court, therefore, finds that, as a matter of fact, McKay's October 2000 recission of his zero tax returns nullifies his argument that the statute of limitations for those same zero returns expired in April 2006.

---

[34] *Id.* p 4.

[35] *Id.*

[36] *Id.*

[37] *See Davis*, 603 F.3d at 307.

[38] Doc. No. 35-2, *IRS Ex. 3*, p 7 ¶ [36] (introduced into evidence at May 22, 2008 trial (H'ring Tr. 8-9, 33)).

9

D. The Force and Effect of the IRS's Procedural Rules and Agents' Statements

At trial, McKay argued that (1) procedures contained in the IRS's Internal Revenue Manual ("IRM") and (2) statements made by IRS agents in an effort to comply with those procedures constitute admissions by the IRS that McKay did, in fact, submit valid returns sufficient to start the statute of limitations clock running in April of 2000. This Court specifically rejects McKay's assertion that the IRS's procedural rules and its agents' statements are legally binding. As the Sixth Circuit has noted, "the circuits have consistently held that the [IRS's] Statement of Procedural Rules is only directory and not mandatory."[39] And in what is binding precedent on this Court, the Fifth Circuit specifically found that the purpose of the IRS's Statement of Procedural Rules "is to govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law."[40] Therefore, any statement made by an IRS agent in an effort to comply with the IRS's Procedural Rules or the IRM is likewise, directory guidance and not binding on the IRS as a conclusion of law.

## **Conclusion**

Given that McKay's zero returns as originally filed failed all four elements of the *Beard* Test and then six months later McKay formally rescinded them, this Court finds that the 1996-98 zero returns do not constitute valid returns. The Court concludes that the statute of limitations never started running[41] and that a tax for these periods "may be assessed . . . at any time" under § 6501(c)(3). Accordingly, it is

---

[39] *Estate of Jones v. Comm'r*, 795 F.2d 566, 571 (6th Cir. 1986).

[40] *Einhorn v. DeWitt*, 618 F.2d 347, 350 (Former 5th Cir. 1980) (citations omitted) (binding precedent under the Eleventh Circuit's ruling in *Bonner*, 661 F.2d at 1209).

[41] Because the statute of limitations never started running, the Court need not decide whether the IRS impermissibly assessed a new tax when it included the four additional 1996-98 real estate transactions in its Tax Claim calculation.

**ORDERED**:

1. McKay's Objection to Claim is OVERRULED.

2. If not already done, the IRS is directed to file an amended proof of claim that recalculates McKay's tax liability for the years 1996-98 consistent with the findings above.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on _June 22, 2010_

Michael G. Williamson
United States Bankruptcy Judge

Copies to be provided by CM/ECF service.